**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **MAZIN G. SAMONA, an individual; and WILD BILL'S FRANCHISING, LLC, a Michigan limited liability company,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**WILD WILD WEST TOBACCO WHOLESALE, INC., a Michigan corporation; WILD WILD WEST TOBACCO INC., a Michigan corporation; WILD WEST TOBACCO FRANCHISE LLC, a Michigan limited liability company; DENIRO SACO, an individual; JOHN DOES 1-100, unknown individuals; and XYZ COMPANIES 1-100, unknown companies,**<br><br>**Defendants.** | Case No. _____<br><br>Hon. _____ |

## **COMPLAINT**

Plaintiffs Mazin G. Samona and Wild Bill's Franchising, LLC ("Plaintiffs" or "Wild Bill's") hereby file this Complaint against Defendants Wild Wild West Tobacco Wholesale, Inc., Wild Wild West Tobacco Inc., Wild Wild West Tobacco Franchise LLC, Deniro Saco, John Does 1-100, and XYZ Companies 1-100, requesting damages and injunctive relief, and in support thereof state as follows:

## **PRELIMINARY STATEMENT**

1.    This is an action for infringement of Plaintiff Mazin G. Samona's federally-registered trademarks and service marks WILD BILL'S and WILD BILL'S TOBACCO and logo



under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), and for substantial and related claims of trademark infringement and unfair competition under the common laws of the State of Michigan, all arising from the Defendants' unauthorized use of the mark  in connection with Defendants' advertising, marketing, promotion, offering for sale, and/or sale and distribution of goods for smoking and smokers' articles, and related to retail store, retail distributorship, online retail outlet, and franchise services related to articles for use with goods for smoking and smokers' articles.

2.      Plaintiffs seek injunctive and monetary relief.

## THE PARTIES

3.      Plaintiff Mazin G. Samona ("Samona") is an individual who resides in Bloomfield Hills, Michigan.  Plaintiff Samona is the Managing Member and majority owner of Wild Bill's Franchising, LLC and the individual owner of the trademark and intellectual property rights asserted.

4.      Plaintiff Wild Bill's Franchising, LLC ("WBF") is a Michigan limited liability company with its principal place of business at 1100 W Maple Road, Troy, Michigan 48084. The majority of WBF is owned by Plaintiff Samona and WBF uses the marks WILD BILL'S and WILD BILL'S TOBACCO as well as the logo and design marks therefor under a license.

5.      Upon information and belief, Defendant Wild West Tobacco Wholesale, Inc., is a corporation organized under the laws of Michigan, and may be served by serving its registered agent Deniro Saco at the company's registered business address, 29870 Middlebelt Road, Farmington Hills, Michigan, 48334.

6.      Upon information and belief, Defendant Wild West Tobacco Inc., is a corporation organized under the laws of Michigan, and may be served by serving its registered agent Deniro

Saco at the company's registered business address, 604 W Main, Suite B, Gaylord, Michigan, 49735.

7.     Upon information and belief, Defendant Wild West Tobacco Franchise LLC is a limited liability company organized under the laws of Michigan and may be served by serving its registered agent Deniro Saco at the company's registered business address, 810 S Otsego Avenue, Suite 102, Gaylord, Michigan, 49735.

8.     Upon information and belief, Defendant Deniro Saco ("Saco") is an individual who resides at 3600 Kennedy Place, Williamsburg, Michigan, 49690. Upon information and belief, Defendant Saco is the President of Defendant Wild Wild West Tobacco, Inc. and is the registered agent for Defendants Wild Wild West Tobacco Wholesale Inc. and Wild Wild West Tobacco Franchise LLC (collectively, the "WWWT Entities"), and has conducted business through the WWWT Entities.

9.     Plaintiffs do not know the true names and capacities of the individuals sued herein as John Does 1 through 100, and therefore sue these individuals by such fictitious names. Upon information and belief, these individuals are believed to do business as and/or own, operate, or otherwise control or have conspired with Saco and/or the WWWT Entities to harm Plaintiffs.

10.     Upon information and belief, John Does 1 through 100 transact substantial business and are or will be present in and about this district in connection with the claims asserted below and are or will be subject to the jurisdiction of this Court.  Plaintiffs will amend this Complaint to allege the true names and capacities of these Defendants if it ascertains the same.

11.     Plaintiffs do not know the true names and capacities of the business entities sued herein as XYZ Companies 1 through 100, and therefore sue these business entities by such

fictitious names. Upon information and belief, these business entities are believed to have conspired with Saco, the WWWT Entities, and/or John Does 1 through 100 to harm Plaintiffs.

12.     Upon information and belief, XYZ Companies 1 through 100 transact substantial business and are or will be present in and about this district in connection with the claims asserted below and are or will be subject to the jurisdiction of this Court.  Plaintiffs will amend this Complaint to allege the true names and capacities of these Defendants if it ascertains the same.

13.     Defendants Saco, the WWWT Entities, John Does 1-100, and XYZ Companies 1-100, and each of them, are individuals and business entities who, upon information and belief, are acting in concert and active participation with each other in committing the wrongful acts alleged herein. Defendants Saco, the WWWT Entities, John Does 1-100, and XYZ Companies 1-100 are hereinafter referred to collectively as "Defendants."

## JURISDICTION AND VENUE

14.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), and 28 U.S.C. §§ 1331 (federal question), 1338(a) (acts of Congress relating to trademarks), and 1338(b) (pendent unfair competition claims).  The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

15.     The Court has personal jurisdiction over each Defendant because, upon information and belief, Defendants have transacted, solicited, and done business in this District, because a substantial part of the relevant events occurred in this District, and because Defendants have infringed, contributed to the infringement of, and/or actively induced others to infringe Plaintiff Samona's federally protected trademarks in this District, and because Defendants continue to

infringe, contribute to the infringement of, and/or actively induce others to infringe Plaintiff Samona's trademarks in this District.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) because, upon information and belief, each Defendant's principal place of business is in this District and each Defendant has committed acts of infringement in this District.

## FACTUAL BACKGROUND

17.     Since 2011, Wild Bill's has been a leading seller and provider of a wide range of goods and services, including retail store services featuring smokers' articles; tobacco; cigarette and pipe tobacco; electric and electronic cigarettes; and smokers' articles, namely, glass, acrylic, and ceramic water bongs, water bubblers, steam rollers, glass hookah pipes, and dugouts, among many other goods and services (the "Wild Bill's Goods and Services").

18.     Wild Bill's is now the number one retailer of tobacco and smoking articles in the state of Michigan, with more than 120 locations in Michigan, Ohio, and Indiana.

19.     To establish, maintain, and protect its reputation as a nationally-recognized retailer of tobacco and smoking articles, Wild Bill's has made substantial monetary and other investments through its marketing, promotional, and distribution efforts, which include investing in various intellectual property resources associated with the Wild Bill's business.

20.     Plaintiff Samona, in his capacity as Managing Member and Owner of WBF, is the owner and licensor of several United States trademark registrations for the Wild Bill's business, including Registration Nos. 4,100,308 (covering "retail store services featuring smokers' articles") and 4,243,727 (covering "tobacco, namely, pipe tobacco") for WILD BILL'S, and Registration No. 4,100,309 (covering "retail store services featuring smokers' articles") for WILD BILL'S TOBACCO (collectively the "Wild Bill's Registrations").  Copies of the Wild Bill's Registrations

are attached hereto as Exhibit 1.  Plaintiff WBF is an authorized licensee of the Marks in the Wild Bill's Registrations.

21.     Plaintiffs have used the Marks shown in the Wild Bill's Registrations continuously, exclusively, and extensively since at least 2011 in connection with the Wild Bill's Goods and Services.

22.     Wild Bill's products bearing the Marks of the Wild Bill's Registrations have been sold extensively.  Each of the Wild Bill's retail locations prominently features the Marks shown in the Wild Bill's Registrations.

23.     Wild Bill's has earned valuable and residual goodwill and reputational notoriety in the minds of consumers in the United States for being the sole source of goods bearing the Marks of the Wild Bill's Registrations.

24.     Wild Bill's has advertised and otherwise promoted the Marks of the Wild Bill's Registrations extensively since their first use thereof, through the internet and by other means.

25.     Under 15 U.S.C. § 1115, the Wild Bill's Registrations are presumptively valid and are *prima facie* evidence of Plaintiff Samona's ownership of the Marks WILD BILL'S and WILD BILL'S TOBACCO and of Plaintiff Samona's exclusive right to use or license use of the Marks WILD BILL'S and WILD BILL'S TOBACCO nationwide, in commerce on or in connection with the goods and services specified in the Wild Bill's Registrations.

26.     Under 15 U.S.C. § 1072, the Wild Bill's Registrations provide constructive notice of Plaintiff Samona's claim of ownership in and use of the Marks WILD BILL'S and WILD BILL'S TOBACCO throughout the United States from the date of the registration.

27.     Under 15 U.S.C. § 1057, registration of the Marks WILD BILL'S and WILD BILL'S TOBACCO on the Principal Register provides that the filing of the application to register

these Marks constitutes constructive use of the mark and confers a nationwide right of priority on or in connection with the goods or services specified in the Wild Bill's Registrations against any other natural person or organization capable of being sued in a court of law.

28.     The Marks WILD BILL'S and WILD BILL'S TOBACCO are distinctive to both the consuming public and Wild Bill's trade.

29.     Plaintiff Samona is the owner of all right, title and interest in and to the Wild Bill's Registrations.

30.     Plaintiff Samona is also the owner of all common law rights in the Wild Bill's Tobacco Logo shown below, which also has been used in interstate commerce since on or before October 31, 2011:



Pictures of some of the stores using the Wild Bill's Tobacco Logo, and the Wild Bill's Tobacco home page, are attached as Exhibit 2.  Collectively, the Wild Bill's Registrations and the Wild Bill's Tobacco Logo are referred to as the "Wild Bill's Marks".

31.     Plaintiffs have expended substantial time, effort, and resources in developing the Wild Bill's Marks and associated goodwill, and to establish the public's recognition of the Marks as the source of the high-quality Wild Bill's Goods and Services.  Plaintiffs have built a nationwide reputation and notoriety in the Wild Bill's Marks associated with the Wild Bill's Goods and Services.

32.     Plaintiffs have used the Wild Bill's Marks on signs, advertisements, websites and other promotional materials associated with their goods and services. As a result of these efforts,

Plaintiffs have built substantial recognition, reputation and goodwill in the Wild Bill's Marks, and the Wild Bill's Marks are of inestimable value to Plaintiffs.

## **DEFENDANTS' WRONGFUL CONDUCT**

33.     Upon information and belief, Defendants operate a multitude of competing stores that provide goods and services identical to or overlapping with the Wild Bill's Goods and Services.

34.     Upon information and belief, Defendants have used the infringing mark WILD WILD WEST TOBACCO affixed to products and in the promotion of services, sales, distribution, and offers to sale or distribute products in interstate commerce.  Upon information and belief, these goods and services provided and promoted by Defendants are identical to, are commercially related to and/or overlap with the Wild Bill's Goods and Services.

35.     In addition to using the infringing word mark WILD WILD WEST TOBACCO, Defendants are using the confusingly similar design mark (the "infringing design") shown below:



36.     As shown in the sample images attached as Exhibit 3, Defendants have used the infringing design in various mediums, including at multiple store fronts and on the internet.

37.     Defendant Wild Wild West Tobacco Wholesale, Inc. has also filed a United States application to register the standard character mark WILD WILD WEST TOBACCO for various services in class 35, including retail stores, retail distributorships, online retail outlets, and franchise services related to articles for use with cigarettes, cigars, electronic cigarettes, novelties, pipes, smokeless tobacco, tobacco, tobacco free oral nicotine pouches, tobacco products, and tobacco substitutes, among other services. This application was filed under Serial No. 90111796

on August 13, 2020 and is based on an alleged first use date of June 30, 2015. Both the application filing date and claimed first use date in Application Serial No. 90111796 are long after the filing dates, registration dates, and first use dates of the Wild Bill's Marks in the Wild Bill's Registrations.  Application Serial No. 90111796 was published on April 13, 2021. Plaintiff Samona plans to file an opposition against said application.

38.  Defendants' aforementioned unlawful acts are intended to, and are likely to, cause confusion as to the source of Defendants' service and, at the same time, harm the reputation of Plaintiffs and the Wild Bill's Goods and Services.

39.  Defendants' aforementioned unlawful acts have caused, and will continue to cause irreparable harm to Plaintiffs and the Wild Bill's Marks, and to the business and substantial goodwill represented thereby, and Defendants' unlawful acts will continue to damage Plaintiffs unless restrained by this Court.

40.  Over a two-month period, Plaintiffs have documented approximately 60 instances of actual customer confusion due to Defendants' use of the infringing mark WILD WILD WEST TOBACCO and the infringing design  (the "infringing marks").  Plaintiffs' customers erroneously thought they were doing business with  when they were actually dealing with  and vice versa.

41.  Plaintiffs have no adequate remedy at law.

42.  Defendants' continued use of the infringing marks is willful and intentional. Specifically, prior to filing this lawsuit, Plaintiffs contacted Defendants Saco, Wild West Tobacco Wholesale, Inc., and Wild Wild West Tobacco Inc. informing them of their unlawful activities related to infringement of the Wild Bill's Marks and the resulting actual instances of confusion

caused by Defendants' willfully infringing actions. The letter sent by Plaintiffs to Defendants prior to the filing of this lawsuit is attached as Exhibit 4.  Plaintiffs requested that Defendants cease and desist from their unlawful use of any mark that is confusingly similar to any of the Wild Bill's Marks, but Defendants refused.

43.    Defendant Saco is a corporate officer, co-founder, and/or representative of each of the WWWT Entities and substantially directed, assisted, and/or encouraged the unlawful actions complained of herein.

44.    Upon information and belief, the WWWT Entities are each an alter ego of Defendant Saco, and each of the WWWT Entities has been used by Defendant Saco as a device in the commission of the aforementioned unlawful actions by Defendants.

## CAUSES OF ACTION

## COUNT 1 — FEDERAL TRADEMARK INFRINGEMENT

45.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Original Complaint as if fully set forth herein.

46.    Defendants have used, and are currently using, the confusingly similar infringing marks in commerce in connection with the sale, offering for sale, distribution or advertising of goods and services that are identical to and/or overlap with the Wild Bill's Goods and Services. Defendants' use of the infringing marks is without the consent of Plaintiffs.

47.    Defendants' use of the infringing marks is likely to cause, and has caused, confusion, mistake, or deception as to:

a.    Defendants' affiliation, connection, or association with the Wild Bill's business; and/or

b.      the origin, sponsorship, or approval of Defendants' products, services, or

commercial activities by Plaintiffs.

48.     Plaintiffs have been damaged by Defendants' use of the infringing marks and are

likely to be further damaged by Defendants' continued use of the infringing marks. In particular,

Defendants' use of the infringing marks is likely to cause the Marks of the Wild Bill's Registrations

to lose their significance as indicators of origin.

49.     Upon information and belief, Defendants adopted and first used colorable

imitations of, and designations substantially identical to the Marks of the Wild Bill's Registrations

with full knowledge and/or constructive knowledge of Plaintiffs' rights.  Therefore, Defendants

have willfully infringed such rights.

50.     Upon information and belief, Defendants have made and will continue to make

substantial profits and/or gains to which they are not entitled to in law or equity.

51.     Upon information and belief, Defendants intend to continue their infringing acts,

unless restrained by this Court.

52.     Defendants' acts have damaged and will continue to damage Plaintiffs, and

Plaintiffs have no adequate remedy at law.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are

entitled to damages in an amount to be proven at trial.

54.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover the costs of this

action. Further, the intentional nature of Defendant's unlawful acts renders this an "exceptional

case," entitling Plaintiffs to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT 2 — FALSE DESIGNATION OF ORIGIN/ UNFAIR COMPETITION

55.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Original Complaint as if fully set forth herein.

56.     The acts of Defendants complained of herein constitute unfair competition, including false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Defendants' promotion, advertising, distribution, importation, sale, and/or offering for sale of products and services using the infringing marks, together with Defendants' use of other indicia associated with Plaintiffs, is intended to, and is likely to, confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the infringing products, and is intended, and is likely to cause such parties to believe in error that the infringing products have been authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

58.     Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains that they are not entitled to in law or equity.

59.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

60.     Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs are entitled to damages in an amount to be proven at trial and recovery of reasonable attorneys' fees and costs incurred herein.

## COUNT 3 — COMMON LAW TRADEMARK INFRINGEMENT

62.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Original Complaint as if fully set forth herein.

63.     Defendants' use of the confusingly similar infringing marks infringes on Plaintiffs' exclusive trademark rights in the Wild Bill's Marks in violation of the common law of the State of Michigan.

64.     As a direct and proximate result of the unlawful acts alleged herein, Plaintiffs have and are continuing to suffer damages, and have suffered and will continue to suffer irreparable injury for which Plaintiffs have no adequate remedy at law, and Defendants have and will continue to profit and receive other benefits.

65.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Plaintiffs, including its business, reputation, and goodwill, and will continue to damage Plaintiffs and deceive the public unless permanently enjoined by this Court.  Plaintiffs have no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

66.     On information and belief, Defendants' use of the infringing marks has been intentional, willful and in bad faith.

## COUNT 4 — COMMON LAW UNFAIR COMPETITION

67.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Original Complaint as if fully set forth herein.

68.     Plaintiffs and Defendants are competitors, and Defendants offer goods and services that overlap with the Wild Bill's Goods and Services.

69.     Defendants' actions as set forth herein are designed to unfairly compete with Plaintiffs and constitute unfair competition under the common law of the State of Michigan.

70.     Plaintiffs have suffered irreparable harm and monetary damages as the direct and proximate result of Defendants' actions.

## COUNT 5 — DECLARATORY JUDGMENT: ALTER EGO / PIERCING THE CORPORATE VEIL

71.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs of this Original Complaint as if fully set forth herein.

72.     This Court is vested with jurisdiction to provide declaratory relief as set forth in 28 U.S.C. § 2201 *et seq*.

73.     An actual controversy exists between Plaintiffs and Defendants in that Defendant Saco has used the WWWT Entities to perform the unlawful activities complained of herein, and Plaintiffs seek to resolve uncertainty regarding the liability of Defendant Saco for these unlawful activities.

74.     Defendant Saco is a corporate officer, co-founder, and/or representative of each of the WWWT Entities.

75.     The WWWT Entities are each a sham name, brand, mark, business, and/or entity created for the improper and unlawful purpose of being utilized as an alter ego and tool for the personal business of Defendant Saco.

76.     The WWWT Entities, upon information and belief, serve as the alter egos of Defendant Saco, and also of their remaining respective members, managers, officers, and directors, and do not adequately preserve the corporate form.

77.     Upon information and belief, Defendant Saco exercises substantially total control over the management and activities of the WWWT Entities.

78.     Observance of the corporate form of the WWWT Entities would sanction a fraud or promote injustice.

79.     Plaintiffs are entitled to pierce the corporate and/or "limited liability company" veil of the WWWT Entities and hold Defendant Saco personally responsible for the unlawful acts of the WWWT Entities.

80.     This Court should issue a declaratory judgment that the WWWT Entities are alter-egos of Defendant Saco, that the corporate and/or "limited liability company" veil of the WWWT Entities is pierced to reach Defendant Saco, and that he is personally liable for the unlawful actions committed against Plaintiffs complained of herein.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in its favor and against Defendants finding as follows:

A.     That Plaintiffs' rights in and to the Marks of the Wild Bill's Registrations are valid, enforceable and have been infringed by Defendants;

B.     That Defendants (i) have violated Section 32 of the Lanham Act (15 U. S. C. § 1114); Section 43(a) of the Lanham Act (15 U. S. C. § 1125(a)) of the Lanham Act (15 U. S. C. § 1125(c)); and (ii) have engaged in trademark infringement and unfair competition in violation of the common law of the State of Michigan;

C.     That Defendants have willfully infringed the Wild Bill's Marks;

D.     That Defendants, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, abandon United States Trademark Application No. 90111796.

E.     That the Director of the Trademark Office reject Application No. 90111796.

F.  That Defendants, their agents, servants, employees and all persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

   i.   using the Wild Bill's Marks or colorable imitations thereof and other designs, designations and indicia which are likely to cause confusion, mistake or deception with respect to Plaintiffs' rights; and

   ii.  otherwise infringing Plaintiffs' rights in the Wild Bill's Marks and competing unfairly with Plaintiffs.

G.  That the WWWT Entities are alter-egos of Defendant Saco, that the corporate and/or "limited liability company" veil of the WWWT Entities is pierced to reach Defendant Saco, and that he is personally liable for the unlawful actions committed against Plaintiffs complained of herein.

H.  That Defendants be required to pay to Plaintiffs such damages, statutory or otherwise, together with prejudgment interest thereon, as Plaintiffs have sustained in consequence of Defendants' unlawful acts, and to account for and return to Plaintiffs any monies, profits, and advantages gained by Defendants.

I.  That Defendants pay to Plaintiffs the costs and disbursements of this action, including prejudgment and post-judgment interest thereon, and that reasonable attorney's fees be awarded to Plaintiffs.

J.  That all damages sustained by Plaintiffs be trebled.

K.  That Defendants be required to pay to Plaintiffs any and all other damages available under the law.

L.      That, pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118, Defendants

deliver up for impoundment during the pendency of this action, and for

destruction upon entry of judgment, all infringing articles and immediately

discontinue use of the infringing imitations.

M.      That Defendants be directed to file with this Court, and serve on Plaintiffs within

thirty (30) days after the service of any temporary restraining order, and/or

preliminary or permanent injunction a written report under oath setting forth in

detail the manner and form in which Defendants have complied with the

injunction.

N.      That Plaintiffs be granted such other and further relief as this Court may deem

appropriate.


Dated:  May 10, 2021                          Respectfully submitted,

**DYKEMA GOSSETT PLLC**


By: _/s/ Jill M. Wheaton_____
Jill M. Wheaton
2723 S. State St., Ste. 400
Ann Arbor, MI  48104
734-214-7629
jwheaton@dykema.com

Brian M. Moore
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI  48304
248-203-0772
bmoore@dykema.com

**Attorneys for Plaintiffs**

### INDEX TO EXHIBITS

1.    Trademark Registrations

2.    Examples of Plaintiffs' storefronts and web page

3.    Examples of Defendants' storefronts and web page

4.    Correspondence between the parties.